(Slip Opinion) OCTOBER TERM, 2008 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOCKE ET AL. *v.* KARASS, STATE CONTROLLER, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 07–610. Argued October 6, 2008—Decided January 21, 2009

The collective-bargaining agreement between Maine and respondent local union, the exclusive bargaining agent for certain state employees, requires nonmember employees represented by the union to pay the local a "service fee" equal to the portion of union dues related to ordinary representational activities, *e.g.,* collective bargaining or contract administration activities. That fee does not include nonchargeable union activities such as political, public relations, or lobbying activities. The fee includes a charge that represents the "affiliation fee" the local pays to the national union. But, it covers only the part of the affiliation fee that helps to pay for the national's own chargeable activities, which include some litigation activities that directly benefit other locals or the national itself, rather than respondent local. The petitioners, nonmembers of the local, brought this suit claiming, *inter alia,* that the First Amendment prohibits charging them for any portion of the service fee that represents litigation that does not directly benefit the local, *i.e.,* "national litigation." The District Court found no material facts at issue and upheld this element of the fee. The First Circuit affirmed.

*Held:* Under this Court's precedent, the First Amendment permits a local union to charge nonmembers for national litigation expenses as long as (1) the subject matter of the (extra-local) litigation is of a kind that would be chargeable if the litigation were local, *e.g.,* litigation appropriately related to collective bargaining rather than political activities, and (2) the charge is reciprocal in nature, *i.e.,* the contributing local reasonably expects other locals to contribute similarly to the national's resources used for costs of similar litigation on behalf of the contributing local if and when it takes place. Pp. 4–13.

(a) Prior decisions frame the question at issue. The Court has long

held that the First Amendment permits local unions designated as the exclusive bargaining representatives for certain employees to charge nonmember employees a service fee as a condition of their continued employment. With respect to litigation expenses, the Court also held that a local could charge nonmembers for expenses of litigation normally conducted by an exclusive representative, including litigation incidental to collective bargaining, but said (in language that the petitioners here emphasize) that litigation expenses "not having such connection with the bargaining unit are not to be charged to objecting employees." *Ellis* v. *Railway Clerks*, 466 U. S. 435, 453. Later, the Court held, with respect to the chargeability of a local's payment of an affiliation fee to a national, that the local "may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit." *Lehnert* v. *Ferris Faculty Assn.*, 500 U. S. 507, 524. The Court added that the local unit need not "demonstrate a direct and tangible impact upon the dissenting employee's unit," although there must be "some indication that the payment [say, to the national] is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Ibid.* However, the *Lehnert* Court split into three irreconcilable factions on the subject here at issue, payment for national litigation. Pp. 4–9.

(b) Because *Lehnert* failed to find a majority as to the chargeability of national litigation expenses, the lower courts have been uncertain about the matter. Having examined the question further, however, the Court now believes that, consistent with its precedent, costs of such litigation are chargeable provided the litigation meets the relevant standards for charging other national expenditures that the *Lehnert* majority enunciated. Under those standards, a local may charge a nonmember an appropriate share of its contribution to a national's litigation expenses if (1) the subject matter of the national litigation bears an appropriate relation to collective bargaining and (2) the arrangement is reciprocal—that is, the local's payment to the national affiliate is for "services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." 500 U. S., at 524. Logic suggests that the same standard should apply to national litigation expenses as to other national expenses, and the Court can find no significant difference between litigation activities and other national activities, the cost of which this Court has found chargeable. The petitioners' arguments to the contrary, which rest primarily on their understanding of *Ellis* and *Lehnert,* are rejected. Pp. 9–11.

Syllabus

(c) Applying *Lehnert*'s standard to the national litigation expenses at issue demonstrates that they are both appropriately related to collective bargaining activities and reciprocal, and are therefore chargeable. First, the record establishes that the *kind* of national litigation activity for which the local charges nonmembers concerns only those aspects of collective bargaining, contract administration, or other matters that the courts have held chargeable. No one here denies that under *Lehnert* this kind of activity bears an appropriate relation to collective bargaining. See, *e.g.,* 500 U. S., at 519. Second, although the *location* of the litigation activity is at the *national* (or extraunit) level, such activity is chargeable as long as the charges are for services that may ultimately inure to local members' benefit by virtue of their membership in the national union. *Ibid.* Respondent local says that the payment of its affiliation fee gives locals in general access to the national's financial resources—compiled via contributions from various locals—which would not otherwise be available to the local when needed to effectively negotiate, administer, or enforce the local's collective-bargaining agreements. Because no one claims that the national would treat respondent local any differently from other locals in this regard, the existence of reciprocity is not in dispute. Pp. 11–13.

498 F. 3d 49, affirmed.

BREYER, J., delivered the opinion for a unanimous Court. ALITO, J., filed a concurring opinion, in which ROBERTS, C. J., and SCALIA, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 07–610

_____

## DANIEL B. LOCKE, ET AL., PETITIONERS *v.* EDWARD A. KARASS, STATE CONTROLLER, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[January 21, 2009]

JUSTICE BREYER delivered the opinion of the Court.

The State of Maine requires government employees to pay a service fee to the local union that acts as their exclusive bargaining agent even if those employees disagree with, and do not belong to, the union. This Court has held that, in principle, the government may require this kind of payment without violating the First Amendment. See, *e.g., Railway Employes* v. *Hanson*, 351 U. S. 225 (1956) (upholding such an arrangement as constitutional); *Abood* v. *Detroit Bd. of Ed.*, 431 U. S. 209 (1977) (same); *Lehnert* v. *Ferris Faculty Assn.*, 500 U. S. 507 (1991) (same). At the same time, the Court has considered the constitutionality of charging for various elements of such a fee, upholding the charging of some elements (*e.g.,* those related to administering a collective-bargaining contract) while forbidding the charging of other elements (*e.g.,* those related to political expenditures). Compare, *e.g., Ellis* v. *Railway Clerks*, 466 U. S. 435 (1984), with *Machinists* v. *Street*, 367 U. S. 740 (1961).

In this case, a local union charges nonmembers a service fee that (among other things) reflects an affiliation fee

that the local union pays to its national union organiza-
tion. We focus upon one portion of that fee, a portion that
the national union uses to pay for litigation expenses
incurred in large part on behalf of *other* local units. We
ask whether a local's charge to nonmembers that reflects
that element is consistent with the First Amendment.
And we conclude that under our precedent the Constitu-
tion permits including this element in the local's charge to
nonmembers as long as (1) the subject matter of the (ex-
tra-local) litigation is of a kind that would be chargeable if
the litigation were local, *e.g.,* litigation appropriately
related to collective bargaining rather than political activi-
ties, and (2) the litigation charge is reciprocal in nature,
*i.e.,* the contributing local reasonably expects other locals
to contribute similarly to the national's resources used for
costs of similar litigation on behalf of the contributing
local if and when it takes place.

I

Maine has designated the Maine State Employees
Association (the local union) as the exclusive bargaining
agent for certain executive branch employees. A collec-
tive-bargaining agreement between Maine and the local
requires nonmember employees whom the union repre-
sents to pay the local union a "service fee." And that
service fee equals that portion of ordinary union dues that
is related to ordinary representational activities, *e.g.,*
collective bargaining or contract administration activities.
In calculating the fee, the union starts with ordinary
union dues and subtracts a sum representing the pro rata
cost of nonchargeable union activities such as political,
public relations, or lobbying activities.

The service fee includes a charge that represents the
affiliation fee the local pays to its national union, the
Service Employees International Union. The included
charge takes account of the affiliation fee, however, only

insofar as the fee helps to pay for the national's activities that are of a chargeable kind, such as collective-bargaining or contract administration activities. The local does not charge nonmembers for the portion of the affiliation fee that helps pay for the national's activities of a kind that would not normally be chargeable, such as political, public relations, or lobbying activities.

The local includes in the chargeable portion of the affiliation fee an amount that helps the national pay for litigation activities, some of which do not *directly* benefit Maine's state employees' local but rather directly benefit other locals or the national organization itself. (For purposes of simplicity, we shall call all this extraunit litigation "national litigation.") As is true of all other parts of the affiliation fee, the local's charge to nonmembers reflects these national litigation costs only insofar as the national litigation concerns activities that are of a chargeable kind. The local does not charge nonmembers for the portion of national litigation costs that concerns activities of a kind that would not normally be chargeable, such as political, public relations, or lobbying activities.

Numbers may help illustrate the scope of the issue. In 2005, the full service fee the local charged nonmembers amounted to about 49% of a member's ordinary union dues. (The petitioners here, beneficiaries of grandfathering rules, paid a half fee, amounting to about 24.5% of a member's fee.) The full fee for employees like the petitioners would have amounted to about $9.70 per month. About $1.34 per month of that $9.70 reflected a pro rata share of the portion of the national affiliation fee that the local believed was chargeable. The portion of the $1.34 per month affiliation fee charge that represented national litigation costs—the cost here at issue—amounted to considerably less.

Although the amount at issue per nonmember may be small, nonmembers believed the principle important. And

in December 2005, nonmembers challenged in arbitration several aspects of the local's service fee, including the element at issue here. In 2006, the arbitrator found all aspects of the service fee lawful. Before the arbitrator reached his decision, however, the petitioners, who are nonmembers of the local union, brought this lawsuit in Maine's Federal District Court also challenging various aspects of the service fee, including this element. In particular, they claimed that the First Amendment prohibits charging them for any portion of the service fee that represents what we have called "national litigation," *i.e.,* litigation that does not directly benefit the local. The District Court, finding no material facts at issue, upheld this element of the fee. 425 F. Supp. 2d 137 (2006). The Court of Appeals for the First Circuit affirmed the District Court's determination. 498 F. 3d 49 (2007). Because of uncertainty among the Circuits as to whether, or when, the Constitution permits charging nonmembers for the costs of national litigation, we granted certiorari. Compare *Otto* v. *Pennsylvania State Educ. Assn.-NEA*, 330 F. 3d 125 (CA3 2003), with *Pilots Against Illegal Dues* v. *Air Line Pilots Assn.*, 938 F. 2d 1123 (CA10 1991).

## II

Prior decisions of this Court frame the question before us. In *Hanson, Street,* and *Abood,* the Court set forth a general First Amendment principle: The First Amendment permits the government to require both public sector and private sector employees who do not wish to join a union designated as the exclusive collective-bargaining representative at their unit of employment to pay that union a service fee as a condition of their continued employment. Taken together, *Hanson* and *Street* make clear that the local union cannot charge the nonmember for certain activities, such as political or ideological activities (with which the nonmembers may disagree). But under that

precedent, the local can charge nonmembers for activities more directly related to collective bargaining. In such instances, the Court has determined that the First Amendment burdens accompanying the payment requirement are justified by the government's interest in preventing freeriding by nonmembers who benefit from the union's collective-bargaining activities and in maintaining peaceful labor relations. *Street*, 367 U. S., at 768–772; *Hanson,* 351 U. S.*,* at 233–238.

In *Abood,* the Court explained the basis for a First Amendment challenge to service fees as follows: "To be required to help finance the union as a collective-bargaining agent might well be thought . . . to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit." 431 U. S., at 222. But the *Abood* Court rejected such a challenge. It found that, "the judgment clearly made in *Hanson* and *Street* is that such interference as exists is constitutionally justified by the legislative assessment of the important contribution of the union shop to the system of labor relations established by Congress." *Ibid.* The Court added that, "'furtherance of the common cause leaves some leeway for the leadership of the group. As long as they act to promote the cause which justified bringing the group together, the individual cannot withdraw his support merely because he disagrees with the group's strategy.'" *Id.,* at 223 (quoting *Street, supra,* at 778 (Douglas, J., concurring)).

In *Ellis* and *Lehnert*, the Court refined the general First Amendment principle. In particular, it refined the boundaries of *Abood*'s constitutional "leeway" by describing the nature of the cost elements that the local, constitutionally speaking, could include, or which the local could not constitutionally include, in the service fee. In 1984, the Court wrote in *Ellis* that service fees are constitutionally permissible when they relate to the union's duties of

"negotiating and administering a collective agreement and in adjusting grievances and disputes." 466 U. S*.,* at 446–447 (citing *Railway Clerks* v. *Allen*, 373 U. S. 113, 121 (1963)). Accordingly, the Court explained, the local union could charge the nonmember for union "expenditures [that] are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues." 446 U. S*.,* at 448. In doing so, the union could charge nonmembers for "the direct costs of negotiating and administering a collective-bargaining contract" and for "the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit." *Ibid.*

Applying this standard, the *Ellis* Court examined the particular service fee charges challenged in that case. The Court held that the local union could charge nonmembers for the costs of a national convention, *id.,* at 448–449; for the costs of social activities, *id.,* at 449–450; and for the costs of those portions of publications not devoted to political causes, *id.,* at 450–451. Convention expenses are chargeable, the Court explained, because, if a local union is to function effectively, "it must maintain its corporate or associational existence." *Id.,* at 448.

The Court also held that the local union could charge nonmembers for litigation expenses incidental to the local union's negotiation or administration of a collective-bargaining agreement, fair representation litigation, jurisdictional disputes, or other litigation normally conducted by an exclusive representative. *Id.,* at 453. But the Court then said (in language that the petitioners here emphasize) that "*expenses of litigation not having such connection with the bargaining unit are not to be charged to objecting employees.*" *Ibid.* (emphasis added).

In 1991, the Court in *Lehnert* again described when an

expense is chargeable. The Court said that a chargeable expenditure must bear an appropriate relation to collective-bargaining activity. 500 U. S*.,* at 519. (Its specific description of that relation is not at issue here. Compare *ibid.*, with *id.,* at 557–558 (SCALIA, J., concurring in judgment in part and dissenting in part)). The Court then considered one aspect of the matter here before us, the chargeability of a local union's payment to a national organization, say, an affiliation fee. The Court assumed that, in any given year, such a payment would primarily benefit other local units or the national organization itself, but it would not necessarily provide a direct benefit to the contributing local. The petitioners in the case (nonmembers of a teacher's union) argued that the Constitution forbids a local union to charge nonmembers for these activities, *i.e.,* for "activities that, though closely related to collective bargaining generally, are not undertaken directly on behalf of the bargaining unit to which the objecting employees belong." *Id.,* at 519.

The Court divided five to four on the general affiliation fee matter. The majority of the Court rejected the nonmembers' claim. The Court noted that it had "never interpreted" the chargeability test "to require a direct relationship between the expense at issue and some tangible benefit to the dissenters' bargaining unit." *Id.,* at 522. Indeed, "to require so close a connection would be to ignore the unified-membership structure under which many unions, including those here, operate." *Id.,* at 523. Rather, the affiliation relationship is premised on the "notion that the parent will bring to bear its often considerable economic, political, and informational resources when the local is in need of them." *Ibid.* And that "part of a local's affiliation fee which contributes to the pool of resources potentially available to the local is assessed for the bargaining unit's protection, even if it is not actually expended on that unit in any particular membership

year." *Ibid.*

The Court then held that "a local bargaining representative may charge objecting employees for their pro rata share of the *costs associated with otherwise chargeable activities of its state and national affiliates*, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit." *Id.,* at 524 (emphasis added). Of particular relevance here, the Court added that the local unit need not "demonstrate a direct and tangible impact upon the dissenting employee's unit." Nonetheless, it said, there must be "some indication that the payment [say, to the national affiliate] is for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Ibid.*

Finally, the *Lehnert* Court turned to the subject now before us, that of payment for national litigation. On this point, the Court split into three irreconcilable factions. A plurality of four wrote that, even though the union was "clearly correct that precedent established through litigation on behalf of one unit may ultimately be of some use to another unit," it nonetheless found "extraunit litigation to be more akin to lobbying in both kind and effect." *Id.,* at 528. The plurality added that litigation is often "expressive." It concluded that "[w]hen unrelated to an objecting employee's unit, such activities are not germane to the union's duties as exclusive bargaining representative." *Ibid.*

The Member of the Court who provided the fifth vote for the other portions of the Court's opinion dissented from the part of the opinion on national litigation. Justice Marshall noted that the plurality's discussion of national litigation costs was dicta because no such costs were at issue in the case. *Id.,* at 544 (opinion concurring in part and dissenting in part). Nevertheless, Justice Marshall characterized any rule that found national litigation costs

*per se* nonchargeable as "surely incorrect" and indicated such costs should be assessed under the plurality's own test, *i.e.,* whether the litigation bears an appropriate relation to collective bargaining. *Id.,* at 546–547.

At the same time, four Members of the Court agreed with the nonmembers that including national costs in the service fee violates the First Amendment except when those costs pay for specific services "actually provided" to the local. *Id.,* at 561 (SCALIA, J., concurring in judgment in part and dissenting in part). They thought that a local union cannot charge nonmembers for national activities unless there is a direct relationship between the expenses and "some tangible benefit to the dissenters' bargaining unit." *Id.,* at 562 (internal quotation marks omitted). In other words, the dissent expressly rejected the majority's chargeability test for national expenses. But the dissent did not separately discuss national litigation activities, perhaps because, as Justice Marshall pointed out, they were not directly at issue in that case.

## III

As a result of the *Lehnert* Court's failure to find a majority as to the chargeability of national litigation expenses, the lower courts have been uncertain about the matter. Compare *Otto,* 330 F. 3d, at 138, with *Pilots Against Illegal Dues,* 938 F. 2d, at 1130–1131. Having examined the question further, we now believe that, consistent with the Court's precedent, costs of that litigation are chargeable provided the litigation meets the relevant standards for charging other national expenditures that the *Lehnert* majority enunciated. Under those standards, a local union may charge a nonmember an appropriate share of its contribution to a national's litigation expenses if (1) the subject matter of the national litigation bears an appropriate relation to collective bargaining and (2) the arrangement is reciprocal—that is, the local's payment to

the national affiliate is for "services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." 500 U. S., at 524.

We reach this conclusion in part because logic suggests that the same standard should apply to national litigation expenses as to other national expenses. We can find no significant difference between litigation activities and other national activities the cost of which this Court has found chargeable. We can find no sound basis for holding that national social activities, national convention activities, and activities involved in producing the nonpolitical portions of national union publications all are chargeable but national litigation activities are not. See *Ellis,* 466 U. S*.,* at 448–451. Of course, a local nonmember presumably has the right to attend, and consequently can directly benefit from, national social and convention activities; and a local nonmember can read, and benefit from, a national publication. But so can a local nonmember benefit from national litigation aimed at helping other units if the national or those other units will similarly contribute to the cost of litigation on the local union's behalf should the need arise.

The petitioners' arguments to the contrary rest primarily upon their understanding of *Ellis* and *Lehnert. Ellis*, we must concede, sets forth certain kinds of national litigation—for the most part directly related to a local union's particular interests—as chargeable; but it then goes on to say, as we have earlier pointed out, *ante*, at 6–7, that "expenses of litigation not having such a connection with the bargaining unit are not to be charged to objecting employees." 466 U. S*.,* at 453. Nonetheless, as the Court of Appeals noted, the *Ellis* Court focused upon a local union's payment of national litigation expenses *without any understanding as to reciprocity.* Indeed, JUSTICE KENNEDY pointed out in his *Lehnert* dissent, "*Ellis* . . .

contains no discussion of whether a bargaining unit might choose to fund litigation . . . through a cost sharing arrangement under the auspices of the affiliate." 500 U. S*.,* at 564 (opinion concurring in judgment in part and dissenting in part). *Ellis* nowhere explains *why* reciprocal litigation funding arrangements would fail to benefit a local union. Hence, *Ellis* does not answer the question presented here.

We must also concede that a plurality in *Lehnert* wrote that national litigation expenses were not chargeable "[w]hen unrelated to an objecting employee's unit." 500 U. S., at 528. But, again, reciprocal litigation funding was not before the Court; hence the plurality could not (and did not) decide whether an understanding as to reciprocity produced the relationship necessary for chargeability. Regardless, a plurality does not speak for the Court as a whole.

Nor can one simply add together the four *Lehnert* dissenters and the four Members of the plurality in an effort to find a majority of Justices who hold the petitioners' view. That is because the *Lehnert* majority, speaking for the Court, adopted a more liberal standard of chargeability than the standard embraced by the dissent. And the question here is whether *that standard* permits charging nonmembers for national litigation expenses. There was no majority agreement in *Lehnert* about the answer to this last mentioned question. The best we can do for the petitioners is to find *Lehnert* ambiguous on the point at issue.

## IV

Applying *Lehnert*'s standard to the national litigation expenses here at issue, we find them chargeable. First, the *kind* of national litigation activity for which the local charges nonmembers concerns only those aspects of collective bargaining, contract administration, or other matters

that the courts have held chargeable. *Ellis, supra,* at 446–447. The lower courts found (and the petitioners here do not dispute) that the local charges nonmembers *only* for those national litigation activities that, in respect to subject matter, "were comparable to those undertaken" by the local and which the local "deemed chargeable" in its calculation of the "service fee." 498 F. 3d, at 52, 64–65. And no one here denies that under *Lehnert* this *kind* of activity bears an appropriate relation to collective bargaining. See, *e.g.*, *Lehnert,* 500 U. S*.,* at 519; see also *id.,* at 524 ("[A] local bargaining representative may charge objecting employees for their pro rata share of costs associated with otherwise chargeable activities of its state and national affiliates . . . ").

Second, the *location* of the litigation activity is at the *national* (or extraunit), not the local, level. But, as we have just said (under *Lehnert*), activity at the national level is chargeable as long as the charges in question are "for services that may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Ibid.*

The Court of Appeals treated the litigation charge at issue as reciprocal in nature, and concluded the District Court must have done so as well. See 498 F. 3d, at 64–65. The local union here says that the payment of its affiliation fee gives locals in general access to the national's financial resources—compiled via contributions from various locals—"which would not otherwise be available to the local union when needed to effectively negotiate, administer or enforce the local's collective bargaining agreements." Brief for Respondents 18–19. The resources in question include resources related to litigation. No one claims that the national would treat the local union before us any differently, in terms of making these resources available, than the national would treat any other local. The petitioners do not suggest the contrary. And we

consequently conclude, as did the lower courts, that the existence of reciprocity is assumed by the parties and not here in dispute.

   The record then leads us to find that the national litigation expenses before us are both appropriately related to collective bargaining and reciprocal. Consequently, consistent with our precedent, those expenses are chargeable. The similar determination of the Court of Appeals is affirmed.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

---

No. 07–610

---

## DANIEL B. LOCKE, ET AL., PETITIONERS *v.* EDWARD A. KARASS, STATE CONTROLLER, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE FIRST CIRCUIT

[January 21, 2009]

JUSTICE ALITO, with whom THE CHIEF JUSTICE and JUSTICE SCALIA join, concurring.

I join the opinion of the Court but write separately to note that our decision, as I understand it, does not reach the question of what "reciprocity" means. Petitioners have taken an all-or-nothing position, contending that non-members of a local may *never* be assessed for *any* portion of the national's extraunit litigation expenses. See *ante*, at 4 (noting that petitioners "claimed that the First Amendment prohibits charging them for *any* portion of the service fee that represents what we have called 'national litigation,' *i.e.*, litigation that does not directly benefit the local" (emphasis added)). The opinion correctly concludes, "as did the lower courts, that the existence of reciprocity is assumed by the parties and not here in dispute." *Ante*, at 13.

Thus, this case does not require us to address what is meant by a charge being "reciprocal in nature," or what showing is required to establish that services "'may ultimately inure to the benefit of the members of the local union by virtue of their membership in the parent organization.'" *Ante*, at 12 (citing *Lehnert* v. *Ferris Faculty Assn.*, 500 U. S. 507, 524 (1991)). I understand the Court's opinion to conclude that the litigation expenses at issue here are chargeable only because the parties assumed that

the benefit of any such expenses would be reciprocal.

In its brief as *amicus curiae*, the United States argues that a national union must bear the burden of proving that any expenditures charged to nonmembers of a local are made pursuant to a bona fide pooling arrangement. See Brief for United States 28–29. Once nonmembers object to a charge, the Government submits, the union must prove that the challenged expenditure was made pursuant to an arrangement that is akin to an insurance policy. See *id.*, at 7. This is necessary, the Government contends, to ensure that a charge is in fact "reciprocal in nature."

Because important First Amendment rights are at stake, the Government's argument regarding the burden of establishing true reciprocity has considerable force. Nonetheless, since petitioners in this case did not raise the question whether the Maine State Employees Association's pooling arrangement was bona fide, we need not reach that question today.