Opinion by Judge THOMAS; Dissent by Judge WALLACE.
OPINION
THOMAS, Circuit Judge:
This appeal presents the question of whether a union is required, pursuant to Chicago Teachers Union v. Hudson, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986), in addition to an annual fee notice to nonmembers, to send a second notice when adopting a temporary, mid-term fee increase. Under the circumstances presented by this case, we conclude that a second notice is not required, and we reverse the judgment of the district court.
I
A
Congress has long recognized the “important contribution of the union shop to the system of labor relations.” Locke v. Karass, 555 U.S. 207, 129 S.Ct. 798, 803, 172 L.Ed.2d 552 (2009) (quoting Abood v. Detroit Bd. of Ed., 431 U.S. 209, 222, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977)). The Supreme Court has underscored this Congressional policy by enforcing the right of a union, as the exclusive collective bargaining representative of its employees, to require nonunion employees to pay a fair share of the union’s costs. Ellis v. Bhd. of Ry., Airline and S.S. Clerks, Freight Handlers, Express and Station Employees, 466 U.S. 435, 448, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984). However, the Supreme Court has also recognized the First Amendment limitation on collection of fees from dissenting employees for the support of ideological causes not germane to the union’s duties as collective-bargaining agent. Id. at 447, 104 S.Ct. 1883.
In Hudson, the Supreme Court established certain procedural safeguards to balance these interests by requiring “an adequate explanation of the basis for the fee, a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker, and an escrow for the amounts reasonably in dispute while such challenges are pending.” Id. at 310, 106 S.Ct. 1066. Notices issued pursuant to this language have become known as “Hudson noticefs].” Wagner v. Prof'l Eng’rs in Cal. Gov’t, 354 F.3d 1036, 1039 (9th Cir.2004).
After receiving a Hudson notice, “the nonunion employee has the burden of raising an objection, but ... the union retains the burden of proof’ as to the appropriate proportion of fair share fees. Hudson, 475 U.S. at 306, 106 S.Ct. 1066. It is the policies underlying Hudson that inform the determination of whether a Hudson notice is adequate: “Basic considerations of fairness, as well as concern for the First Amendment rights at stake, ... dictate that the potential objectors be given sufficient information to gauge the propriety of the union’s fee.” Id.
B
This appeal involves the adequacy of a Hudson notice given by SEIU Local 1000 (the “Union”), the exclusive bargaining agent for California state employees. The Union and the State of California have entered into a series of Memoranda of Understanding controlling the terms and conditions of employment for employees, including a provision requiring that all State employees in these bargaining units join the Union as formal Union members, or if opting not to join, pay an “agency” or “fair share” fee to the Union for its representational efforts on their behalf. Id. (known as an “agency shop agreement”). The agency fee is calculated as a percentage of the Union dues paid by members of the Union.
*1118 The Union issues a Hudson notice to all nonmembers every June. The constitutionally required notice is meant to provide nonmembers with an adequate explanation of the basis of the agency fee. Hudson, 475 U.S. at 310, 106 S.Ct. 1066. The notice contains information regarding the Union’s expenditures from the most recently audited prior year, broken down by major category of expense and then, within each category, allocated between “chargeable” and “non-ehargeable” classifications. “Chargeable” expenses are those that are “germane” to the union’s representational functions, and can be charged to all nonmembers of the union. See Lehnert v. Ferris Faculty Ass’n, 500 U.S. 507, 519, 111 S.Ct. 1950, 114 L.Ed.2d 572 (1991) (Blackmun, J., plurality opinion). “Nonchargeable” expenses are those unrelated to the union’s representational functions, such as partisan political expenditures or purely ideological issues. Id. The union may charge nonmembers for non-chargeable expenses, but the nonmember has the option to object, and only be charged a reduced agency fee based upon the percent of the union’s total expenditures that can be classified as “chargeable.” In addition, the nonmember is not charged for certain union-sponsored benefits, such as a credit union credit card, that are not available to nonmembers.
The financial information in the notice forms the basis for calculating the fee to be paid by nonmembers during the ensuing fee year. The notice also provides that for thirty days after the notice is issued, nonunion employees can object to the collection of the full agency fee, and elect instead to only pay a reduced rate during the upcoming fee year based on the percentage ratio of chargeable expenditures to total expenditures. During that thirty day period, nonmembers can challenge the Union’s calculation of its chargeable and non-ehargeable expenses, to be resolved by an impartial decision maker. Knox v. Westly, No. 2:05-CV-02198, 2008 WL 850128, at *2 (E.D.Cal. Mar. 28, 2008).
A given agency fee is in effect from July 1 through June 30 of the following year (the “fee year”), at which point the agency fee set forth in the Union’s next Hudson notice goes into effect. The 2005 Hudson notice set the agency fee to be paid by nonunion employees as 99.1% of the Union dues.[1] The reduced agency fee of 56.35% of Union dues would be charged to nonmembers who objected to paying the full agency fee, and who requested a reduction pursuant to the procedures and deadlines outlined in the notice. The notice explicitly stated dues and fees were subject to change without further notice to fee payers.
During the summer of 2005, the legislative bodies within the Union debated and approved a temporary assessment (also referred to as a dues and fees increase) equal to .0025, or .25% of Union members’ gross wages. The increase took effect at the end of September 2005 and tenninated at the end of December 2006, and was expected to raise $12 million for the Union.
Specifically, on July 30, 2005 the Union’s Budget Committee proposed an emergency temporary assessment to create what was termed in the agenda item introducing it as a “Political Fight Back Fund.” This agenda item stated the Fund “will be used for a broad range of political expenses” in response to several “anti-union” propositions on the November 2005 special election ballot in California, and that the fund “will not be used for regular costs of the union — such as office rent, staff salaries or *1119 routine equipment replacement.” Id. On August 27, 2005 Union delegates voted to implement the temporary dues increase. On August 31, 2005, the Union sent a letter to all members and agency fee payers stating that they were subject to the new increase, and that the fund would be used “to defeat Propositions 76 and 75,” other future attacks on the Union pension plan, and other activities.
The Union material indicated that the fund would be used for political activities. Yet, in response to inquiries, the Union specifically stated it intended to split the increase “between political actions and collective bargaining actions.” Further, not all of the political activities fell into the “non-chargeable” category. The assessment itself included no spending limitations, and the money was actually used for a range of activities, both political and not, and both chargeable and not.[2] Pursuant to the increase, the Controller began collecting additional fees from Plaintiffs at the end of September 2005.
Plaintiffs represent two classes of nonunion employees, those who objected to the Union’s 2005 Hudson notice (“objectors”) and those who did not (“nonobjectors”) (collectively “Plaintiffs”). Knox, 2008 WL 850128, at *2. Plaintiffs initiated this action in November 2005, alleging the assessment violated their First, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. Plaintiffs filed for summary judgment, and the Union filed a cross-motion for partial summary judgment. The district court granted Plaintiffs’ motion in its entirety, and partially granted and partially denied the Union’s motion. This timely appeal followed.
We review de novo a district court’s grant of summary judgment on the sufficiency of the Hudson notice. Cummings v. Connell, 316 F.3d 886, 890 (9th Cir.2003). On review, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir.2004).
II
A
In reviewing the adequacy of the Hudson notice, we employ our usual standard of review, as dictated by Hudson. In that case, the Supreme Court articulated the legal standard to be applied in this analysis as a balancing test, stating that “[t]he objective must be to devise a way of preventing compulsory subsidization of ideological activity by employees who object *1120 thereto without restricting the Union’s ability to require every employee to contribute to the cost of collective-bargaining activities.” Hudson, 475 U.S. at 302, 106 S.Ct. 1066 (quoting Abood, 431 U.S. at 237, 97 S.Ct. 1782).
The Plaintiffs argue we should abandon the balancing test established in Hudson, in favor of strict scrutiny review. They argue that this case involves compelling their speech on political issues, and that therefore the government-mandated speech cases, and their application of strict scrutiny should apply, citing Riley v. Nat’l Fed’n of the Blind, 487 U.S. 781, 795, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) and Rosenberger v. Rector & Visitors, 515 U.S. 819, 827-29, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). We disagree.
First, Hudson itself articulated the legal standard to be applied, and we are not free to reject the balancing test mandated by the Supreme Court.
Second, we articulated the test in Grunwald v. San Bernardino City Unified Sch. Dist., 994 F.2d 1370 (9th Cir.1993). We noted in that case that in challenges to the First Amendment procedure used by unions, the union need not employ procedures that “would minimize further the burden on agency fee payers.” Grunwald, 994 F.2d at 1376 n. 7. “The test, after all, is not whether the union and the [employer] have come up with the system that imposes the least burden on agency fee payers, regardless of cost (a test no system could possibly satisfy); rather we inquire whether the system reasonably accommodates the legitimate interests of the union, the [public employer] and nonmember employees.” Id.
Therefore, we will apply the normal Hudson balancing and reasonable accommodation test we have used in the past when deciding challenges to Hudson notice procedures.[3] See, e.g., Wagner, 354 F.3d at 1039; Cummings, 316 F.3d at 890.
B
Applying the balancing test, we conclude that the Union did not violate the Hudson requirements. The Supreme Court in Hudson recognized the impossibility of determining the chargeability of a union’s anticipated expenditures at the outset of the fee year, and specifically approved calculating the present year’s objector fee based on the prior year’s total expenditures. The Supreme Court explained, “We continue to recognize that there are practical reasons why absolute precision in the calculation of the charge to nonmembers cannot be expected or required. Thus, for instance, the Union cannot be faulted for calculating its fee on the basis of its expenses during the preceding year.” Hudson, 475 U.S. at 307 n. 18, 106 S.Ct. 1066 (internal quotation marks and citations omitted). Hudson thus struck a balance between the rights and burdens in this context, acknowledging that a union is *1121 not constitutionally required to take any and all steps demanded by fee payers to insure that its annual fee notice accurately predicts its actual spending in the upcoming year.
Use of the prior year method is a practical necessity because, for large public sector unions, the Hudson notice must be based on audited financial statements, with the union’s chargeable percentage calculation verified by an independent auditor, and the union must send its fee payers the independent auditor’s report with its Hudson notice. Hudson, 475 U.S. at 307 n. 18, 106 S.Ct. 1066. The audit requirement renders impossible any method of determining the changeability of the upcoming fee year’s expenditures other than basing it on the prior year’s actual expenditures, because one cannot audit anticipated future expenditures. Until the money has been spent, the auditor cannot determine whether the expenditures which the union claims it made for certain expenses were actually made for those expenses. Prescott v. County of El Dorado, 177 F.3d 1102, 1107 (9th Cir.1999), vac’d & remanded on other grounds, 528 U.S. 1111, 120 S.Ct. 929, 145 L.Ed.2d 807, reinstated in relevant part, 204 F.3d 984 (9th Cir.2000).
The inevitable effect of the Hudson “pri- or year” method is a lag of at least one year between the time when a union incurs expenditures and when the audited ratio of its chargeable expenditures to total expenditures is applied to calculate the objectors’ fee for the next year. Fluctuation is inherent in such a method: in each year, objectors may be “underpaying” or “overpaying” fees when compared to the chargeable percentage of the union’s actual expenditures in that year because under Hudson’s “prior year” method the fee is based upon the chargeable percentage of the prior year’s actual expenses, but the inevitable effect of the Hudson method is that these over- and undercharges even out over time. The Hudson notice can never be more than a prediction, which will inevitably be incorrect as to the union’s actual expenditures. The Hudson notice is not, and cannot be expected to be, more than that.
C
The district court faulted the Union for failing to make an accurate prediction in its June 2005 Hudson notice of its actual expenditures in the remainder of that fee year due to the subsequent enactment of the temporary increase. Yet, under the normal Hudson procedure, any payments over and above the Union’s actual chargeable expenditures in the 2005 fee year would be incorporated into the rate for the next fee year. The Supreme Court has determined that this is sufficiently accurate to comply with the constitutional restrictions. There is no principled distinction to be drawn between the paradigmatic Hudson procedure and the one employed here.
Indeed, in the usual Hudson notice situation, the actual chargeable percentage of a union’s actual spending in any given year, as well as the precise dollar amount of dues and fees, will likely vary from the prior year’s figures set forth in the applicable Hudson notice. The Plaintiffs allege the Union did not provide a procedure that would avoid the risk that nonmembers’ funds from the special assessment would be used, even temporarily, to finance nonchargeable activities, but merely offered dissenters the possibility of a rebate. Therefore, the Plaintiffs reason, the procedure is unconstitutional. This construction takes the central Hudson concepts completely out of context and applies them in a way that would not only invalidate the fee increase, but would invalidate the very procedural system decreed by the Supreme Court in Hudson. Plaintiffs appear to argue that because the assessment was *1122 to be used for “purely” political reasons, it could not be constitutionally collected from nonmembers in the first place, and that any collection and then later incorporation of the non-chargeable amount into a future agency fee objector rate would be tantamount to an impermissible rebate of the earlier fee. Yet, the Union had already reduced the fee for objecting nonmembers, and has demonstrated that the assessment was not purely non-chargeable, nor intended to be so. Further, the record belies the assertion that the charges were used “purely” for non-chargeable expenses.[4]
The section of Hudson discussing rebates did not condemn the advance reduction procedure the Union used here, but rather a “pure rebate” system where the union collects a fee that is equal or nearly equal to full dues, and then provides a rebate of the non-chargeable portion to objectors only at the end of the fee year. See Hudson, 475 U.S. at 305, 106 S.Ct. 1066; see also Ellis, 466 U.S. at 443-44, 104 S.Ct. 1883. Here the Union charged objectors only 56.35% of the temporary increase, the chargeable percentage set forth in the June 2005 notice, rather than 100% of the increase followed by a later rebate.
Additionally, the district court’s direction that a union must issue a second Hudson notice when it intends “to depart drastically from its typical spending regime and to focus on activities that [are] political or ideological in nature,” Knox, 2008 WL 850128 at *8, is practically unworkable. Union spending may vary substantially from year to year — in one year there may be a new collective bargaining agreement negotiated, resulting in a high chargeable percentage for objectors that is followed by an election year that results in a low chargeable percentage for objectors. In fact, for example, the chargeable percentage for 2006, the year incorporating the fee increase spending, was higher than that for the 2005 Hudson notice.
Hudson’s prior year method assumes and accepts that a union has no “typical spending regime,” and that even though spending might vary dramatically, a single annual notice based upon the prior year’s audited finances is constitutionally sufficient. Otherwise, a union’s Hudson notice for an upcoming partisan political election year, following a negotiating year, could not be based upon the union’s actual total expenditures in the previous year because the union would intend in the coming fee year to “depart drastically from its previous spending regime and to focus on activities that are political or ideological in nature.” Yet, this is the system set out by Hudson, and no following case has questioned its continuing vitality. The fact that a projection of expenditures may differ from actual expenditures should surprise no one. The key analytic point for Hudson purposes is that proper notice is given and subsequent adjustments made.
The district court’s conclusion was also at odds with our precedent. The district court required the Union to come up with a system that imposes the least burden on agency fee payers. However, the legal requirement for unions in this situation is *1123 to establish a system that merely “reasonably accommodates the legitimate interests of the union, the [public employer] and nonmember employees,” as is the Union’s obligation under Grunwald, 994 F.2d at 1376 n. 7; accord Andrews v. Educ. Ass’n of Cheshire, 829 F.2d 335, 340 (2d Cir. 1987) (“When the union’s plan satisfies the standards established by Hudson, the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they do not wish to support.”). The 2005 notice satisfied the standards established by Hudson.
The Supreme Court’s decision in Davenport v. Washington Education Ass’n, 551 U.S. 177, 127 S.Ct. 2372, 168 L.Ed.2d 71 (2007), does not lead us to a contrary conclusion. In Davenport, the Supreme Court held the Hudson requirements outline a minimum set of procedures by which a public sector union in an agency shop relationship could meet its constitutional requirements, and that state legislatures may place limitations on a union’s entitlement to fees above those laid out in Hudson. Davenport arose in the context of the state of Washington enacting legislation requiring unions to give all nonmembers the objector fee rate unless they affirmatively agreed to be charged for nonchargeable activities (in contrast to the California rule where silence equals consent, rather than dissent). Id. at 182-83, 127 S.Ct. 2372. Davenport held that while the “silence equals consent rule” is constitutional, it is also constitutional for a state to make a “silence equals dissent” rule. Id. at 190-91, 127 S.Ct. 2372. Under Davenport, it is state legislatures, rather than courts, that have the power to implement higher standards. This holding does not alter our conclusion in this case that the 2005 notice was adequate to cover the subsequent dues increase, as Davenport does not speak to such a situation.
Ill
The Union’s notice in this case complied with the Hudson procedural requirements. Therefore, we reverse the district court, and remand with instructions to deny the Plaintiffs’ motion for summary judgment. We also reverse the denial of defendant’s motion for partial summary judgment regarding the consent of nonobjectors under California law, and remand with instructions to grant the motion. We reverse the award of nominal damages to Plaintiffs.
REVERSED AND REMANDED.

. As noted, the gap between 99.1% and 100% represents the value of member restricted benefits.

. The district court and dissent both conflate political expenses and non-chargeable expenses when condemning the assessment as "purely political” and a drastic departure from usual Union spending. Yet, this is not supported by the record. The later audit revealed the assessment included both chargeable and non-chargeable expenses, and the chargeable percentage for the 2006 Hudson notice, which included the spending from the assessment, was actually larger than that from the 2005 notice.
In addition, not all political expenses are automatically non-chargeable. Rather, if germane to collective bargaining, they can be chargeable just like any other expense. See, e.g., Lehnert, 500 U.S. at 520, 111 S.Ct. 1950; Foster v. Mahdesian, 268 F.3d 689, 692 n. 6 (9th Cir.2001); Nat'l Treasury Employees Union v. Chertoff, 452 F.3d 839, 853, 859-60 (D.C.Cir.2006) (regulation allowing employer to unilaterally abrogate collective bargaining agreements fundamentally diminishes a union's bargaining position and nullifies the right to collective bargaining). Here, Proposition 76 would have effectively permitted the Governor to abrogate the Union’s collective bargaining agreements under certain circumstances, undermining the Union's ability to perform its representation duty of negotiating effective collective bargaining agreements.

. The dissent takes issue with the characterization of Hudson requirements as a balancing test, focusing instead on language requiring unions to minimize impingement on nonmembers’ rights and emphasizing the Union has no "right” to agency fees to be balanced by such a test. The dissent insists a balancing test is inappropriate, yet, there is no other way to faithfully characterize the procedure set out in Hudson. Hudson acknowledges that competing interests are at play, and describes a particular set of constitutionally acceptable procedures for attempting resolve with conflict with fairness to both sides. That is a balancing test.
In addition, we have consistently recognized that unions have a legitimate interest and "settled” ability to charge agency fees. See, e.g., Cummings, 316 F.3d at 889. We do not intimate this rises to the level of a constitutional "right,” but that does not mean the union does not have any rights at all in such a situation. Hudson, 475 U.S. at 302, 106 S.Ct. 1066 (affirming union’s right to "require nonunion employees, as a condition of employment” to pay fair share fees).

. The district court and dissent argue the 2005 Hudson notice is inadequate partly because the prior year method does not speak to the "political” nature of the assessment or the propriety of the Union’s changeability determinations. Yet, we have held there is a fundamental difference between "changeability” challenges and "procedural” Hudson notice challenges. Wagner, 354 F.3d at 1046-47. Plaintiffs explicitly concede theirs is only a procedural notice challenge, not a challenge to the Union's actual spending of the fees. Since, according to Plaintiffs, chargeability is immaterial to their challenge, their chief argument (and that of the dissent) premised upon the alleged non-chargeability of the increase (its purely political nature), must fail.